## LIKE *v.* McKINSTRY.

### December, 1868.

Affirming 41 *Barb.* 186.

Slander of title to personal property, as well as to real property, is actionable.

It is not enough, however, to prove that the words were false and injurious, but malice must be shown.

Like *v.* McKinstry.

If one who warned purchasers at an auction sale that he claimed title to the thing sold, when in truth he had none, in so doing acted under advice of counsel, after disclosing to counsel all the material facts, this would repel all idea of malice; but if there is some evidence that he knew he had no title, and if he did not truthfully disclose the facts to counsel, a finding of malice will be sustained.

Peter J. Like sued William H. McKinstry, in the supreme court, for slander of title.

The plaintiff having hired the defendant's farm from April 1, 1861, to April 1, 1862, had, in the fall of 1861, sown rye on the farm, and he claimed that the crop was his; that he had the privilege of harvesting the rye, and of using the hay-press to press the straw, and of gathering from the farm slat-wood wherewith to inclose or bind the straw when pressed.

On March 10, in pursuance of previous notice, the plaintiff had an auction upon the premises, at which he put up the growing rye for sale, and sold it for three hundred and eighty-one dollars and eighty-seven cents.

The alleged slander consisted in the public declaration made by the defendant at the auction sale, that he forbade the sale of the rye, and that the rye was his; by reason of which the plaintiff alleged, the rye was sold for a less sum than its real value, and that he thereby sustained damage. For that the jury found a verdict for the plaintiff for sixty dollars.

*The supreme court*, at general term, on appeal from an order denying a new trial, and from the judgment, held,—on the authority of 1 *T. R.* 512; *Co. Litt.* 197 *b*; Ashley *v.* White, 2 *Ld. Raym.* 953; Winslow *v.* Greenbank, *Willes,* 577; *Vaug.* 47, 253; *Broom's Com.* 514, 764; *Stark. on Sl.* 202; Newman *v.* Zackary, *Aleyn,* 3; *Bac. Abr.* 76 *b;* 1 *Com. Dig.* 370, c. 1; Ingram *v.* Lawson, 6 *Bing. N. R.* 212; Hill *v.* Ward, 13 *Ald.* 310; Hargrave *v.* Le Britten, 4 *Burr.* 2422; Tobias *v.* Harland, 4 *Wend.* 537; Linden *v.* Graham, 1 *Duer,* 670;—that the action would lie in respect to personal as well as real property; and sustained the recovery on substantially the same grounds as the opinion in this court. Defendant appealed.

*J. C. Newkirk,* for defendant, appellant.—That the contract was void, cited Broadwell *v.* Getman, 2 *Den.* 87; Thomas *v.* Dickinson, 14 *Barb.* 90; Baldwin *v.* Palmer, 10 *N. Y.* 232.

That the forbidding the sale was a revocation of the license, Houghtaling *v.* Houghtaling, 5 *Barb.* 379 ; Miller *v.* Auburn, &c. R. R. Co., 6 *Hill,* 61 ; Mumford *v.* Whitney, 15 *Wend.* 380 ; Cook *v.* Stearns, 11 *Mass.* 533 ; Fentinam *v.* Smith, 4 *East,* 108 ; Pierrepont *v.* Barnard, 6 *N. Y.* (2 *Seld.*) 279.* That as defendant had some ground for his claim the action could not be sustained. Bailey *v.* Dean, 5 *Barb.* 297 ; Kendall *v.* Stone, 2 *Sandf.* 269 ; *Stark. on Sl.* 202, 203.

WOODRUFF, J.—Three questions are involved in the controversy between these parties : First, will an action lie for slander of the plaintiff's title ? Second, was there sufficient proof to warrant the submission to the jury of the question, whether the plaintiff had title to the rye in respect of which the alleged slander was uttered, or in other words, were the words false ? Third, was the alleged slander uttered maliciously ?

If these questions are all answered affirmatively, it is not claimed that the plaintiff was not entitled to recover the damages which the jury by their verdict have found in his favor.

[The learned judge here briefly recited the facts.]

1. I percieve no legal impediment to the maintenance of an action for falsely and maliciously asserting title to personal property exposed by another for sale, in order to prevent persons present from bidding or purchasing.

Cases of slander of title, most frequently arising, relate to the title to real estate or leasehold interests therein; but there is no difference in the principle or liability therefor, whether the property referred to be real or personal. On this point I concur in the conclusion of the chief judge, that the action may be sustained.

2. On the question whether the plaintiff or the defendant in fact showed title to the rye, or, in another form, whether the declaration of the defendant that the rye was his, was false, I think it is not accurate nor at all warranted by the proofs, to regard the property put up at the auction, as the property in the rye for any purpose for which a purchaser might make it useful during the twenty days only which would elapse before April 1.(when the term of the plaintiff's hiring would expire),

---

* See also Babcock *v.* Utter, vol. 1, p. 27 of this series.

—whether as pasture or otherwise, snow being then on the ground, and the rye itself, or so much of the growth as had sprung up the previous fall being of very little if of any value, unless permitted to mature and be harvested in the summer or fall following.

Palpably, it was the future crop which was the subject of the auction sale; it was that in which the plaintiff claimed title; it was that for which the bidders offered; and it was that to which the words spoken had the plainest reference; and to that the title of the plaintiff was injured, and by injury to that he sustained damage. It was that, obviously, which was sold for three hundred and eighty-one dollars and eighty-seven cents, and not any mere right to the pasture or other use of the rye fields, for twenty days in March. The jury could not have found that, for injury to the title to the twenty days' pasture, the plaintiff sustained damage to sixty dollars over and above the sum bidden by the purchaser.

Whether the defendant's assertion of title was true or false, depended upon the conclusion which the jury might draw from conflicting testimony.

There was testimony that, upon the hiring for the year, from April 1, 1861, to April 1, 1862, the defendant assured the plaintiff that he might sow rye in the fall and harvest it, &c., in the summer or fall of 1862; and, whatever objection may be urged to the want of binding force of such a parol assurance under the statute of frauds, it was not irrelevant to the inquiry, whether the acts and declarations of the defendant, in the fall of 1861, did not amount to a then binding contract, under which the plaintiff was entitled to the rye, and to the privilege of harvesting it within one year next ensuing, i. e., in the summer or fall following. And on that subject there was evidence tending to show, that in the fall of 1861, the defendant assisted the plaintiff in preparing the ground for rye, and encouraged the plaintiff to sow it, and that, as a part of the transaction, which of itself would constitute further consideration for the privilege of harvesting the rye, the plaintiff consented to and did put into the ground, for the defendant, his timothy seed, for the permanent improvement of his farm. Besides this, the plaintiff's witnesses showed repeated declarations of the defend-

ant, prior to the auction, to the effect, or in substance, that it was the plaintiff's rye.

From all the testimony it was competent for the jury to infer that there was, between the plaintiff and the defendant when the rye and timothy seed was sown, a full understanding that the rye produced was the property of the plaintiff, and that he should have the privilege of harvesting the same.

An arrangement, then, to that effect or mutually affirmed at that time, in faith whereof the plaintiff sowed the rye, and sowed also for the defendant his timothy seed, would not be invalid under the statute of frauds. And, therefore, a finding of the jury that the rye was the plaintiff's rye, is not without evidence. Such a finding involves the conclusion, that the declaration of the defendant at the auction that the rye was his, was not true. It would not be difficult to suggest, moreover, equitable grounds, plausible at least, for insisting that, after all that had transpired, the defendant could not be permitted to hinder or prevent the harvesting of the rye, which the plaintiff had thus been induced to sow.

3. It is, however, not enough that the words spoken were injurious, and were untrue, it must also be shown that they were malicious.

It is entirely clear that if a person have, or believes that he has, a claim to property offered for sale to third persons, and in order to prevent their purchasing, he in good faith discloses his claim according to its true import, no action will lie against him. In such case he does nothing more than it is his right and duty to proposed purchasers to do, if he would protect his claim. His silence on such an occasion, and his omission to give warning, would operate to estop him to assert the right which he believes he has to the property.* The law does not require parties to forbear asserting their claim at the peril of an

---

* Compare, however, as to this point, Manning v. Monaghan, 28 N. Y. 585; Harris v. Murray, Id. 574; Smith v. Hill, 22 Barb. 656; Wood v. Seely, 32 N. Y. 105; Sahler v. Signer, 44 Barb. 606; Frost v. Koon, 30 N. Y. 428; Otis v. Sill, 8 Barb. 102. The inquiry in such cases is whether the party has actually influenced the conduct of others, who will be prejudiced if he be allowed to set up the claim which he omitted to assert.

action for slander. Nor does it place a party who acts in good faith, in the alternative of being estopped, by neglecting to give notice if he is silent, or of being liable to damages if he speaks, and his claim proves to be invalid.

It must, therefore, appear, that he acted with malice in asserting that he had title.

And here, also, the question before us is, was there in this case, evidence which made it proper to submit the question of malice to the jury ? which is in effect the question, whether the defendant acted simply from a desire to protect what he deemed his own rights, by giving such notice of his claims to bidders that should save him from the subsequent imputation of having, by his silence, permitted them to buy in ignorance thereof, or, by estoppel, precluded himself from thereafter alleging his claim against the purchaser.

There was evidence that he acted under the advice of counsel. If it had clearly appeared that he had truthfully disclosed to his counsel all the material facts within his knowledge, and that they advised him therefore that he had title to the rye, and believing that, and on their advice, he gave the notice, this would repel all idea of malice. Cases of prosecution under the advice of counsel, under like full disclosure of all the facts, present a similar question, where an action on the case, charging the prosecution to have been malicious, is brought; where acting in good faith, under the advice of counsel, is deemed a protection.

Here, the repeated admissions of the defendant, testified to by several witnesses, tended not only to show that he had no title, but that he knew that he had no title to the rye, and if the jury believed these witnesses, there was some ground for the inference that knowing he had no title, he acted with malice in asserting that he had.

And again : if the jury believed the plaintiff's witnesses, and the testimony tending to establish the plaintiff's right to harvest the rye, they must have believed that the defendant did not make a truthful disclosure of all the facts within his knowledge, when he took the advice of counsel. Indeed, the plaintiff himself testified, that he made to his counsel the same statement which was embodied in his own testimony at the

trial, and that statement was greatly in conflict with what was testified to by others, in particulars necessarily in his personal knowledge, and in marked contradiction of the admissions several times made by him, as testified to.

Although the evidence of malice, as it appears in the printed case, is not very strong, and might incline me to doubt whether the plaintiff had any other purpose than a perfectly legal and proper one, viz: to notify bidders that he should insist upon a claim which he believed he had, and so induce them to ascertain all the facts before they took the risk of the purchase, still there was evidence, as already seen, tending to the opposite conclusion. And it is, I think, entirely clear that it was proper to submit that question to the jury.

The charge of the court to the jury, is not contained in the case. We must assume it to have been satisfactory. No doubt it correctly stated to the jury the rules of law by which they must be governed, with all proper statement of the defendant's right, if acting in good faith, to protect his supposed claim, by giving notice thereof. Assuming the instructions to the jury to have been correct, they must have found that the defendant spoke the words; that they were false; that they were spoken maliciously; and that the plaintiff sustained thereby the damages awarded to him by their verdict.

We cannot say that there was not evidence in support of these findings, and there was, therefore, no error in law which justifies any reversal in this court. The judgment should, for these reasons, be affirmed.

A majority of the judges concurred.

Judgment affirmed, with costs.